UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RONALD JARMUTH, | Civil Action No.: 4:16-cv-0242-RBH-TER |
| Plaintiff, | |
| -vs- | REPORT AND RECOMMENDATION |
| THE INTERNATIONAL CLUB HOMEOWNERS ASSOCIATION, INC, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, who is proceeding pro se, claims that Defendant retaliated against him for filing a housing discrimination claim. Presently before the court is Defendant's Motion to Dismiss (Document # 45). Because Plaintiff is proceeding pro se, he was warned pursuant to Roseboro v. Garrison, 528 F.3d 309 (4th Cir. 1975), that failure to respond to the Motion to Dismiss could result in dismissal of his claims. Plaintiff timely filed a Response (Document # 48), to which Defendant filed a Reply (Document # 49). At the direction of the court, the parties provided supplemental briefing (Documents # 64, 65, 66). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e) and (g), DSC. Because Defendant's Motion is dispositive, this Report and Recommendation is filed for review by the district judge.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff asserts in his amended complaint that he brings this action

a. To enjoin and remedy retaliation against him by Defendant International Club Homeowners Association, Inc. ("IHOA") for filing a housing discrimination

     claim on August 27, 2009 with the South Carolina Human Affairs Commission, as provided for under 42 USC 3611, 3613, and 3617; and

b.  to obtain Declaratory Judgments as to the mutual rights and obligations between Plaintiff and Defendant pursuant to 28 USC 1343(a)(3) and SC Code Annotated 15-53-30.

Am. Compl. ¶ 1. Plaintiff argues that Defendant retaliated against him by obtaining and attempting to collect a judgment against him for attorneys' fees and costs in a state court action arising from Plaintiff's 2009 complaint filed with the South Carolina Human Affairs Commission (SCHAC). Am. Compl. ¶¶ 4-7. Plaintiff also seeks numerous declaratory judgments regarding the applicability of various state statutes, Advisory Opinions of the South Carolina Attorney General, and Defendant's rules and covenants. Am. Compl. pp. 12-18.

  Defendant argues that this action is simply Plaintiff's attempt to avoid the judgments already rendered in two state lawsuits in 2009 and 2010. Defendants argue that Plaintiff's claims are barred by the doctrine of res judicata and that Plaintiff's Amended Complaint fails to allege facts sufficient to state a claim upon which relief may be granted.

### III. PREVIOUS STATE COURT ACTIONS

  On April 7, 2009, Plaintiff filed an action against the Association (the 2009 case), as well as related Defendants, asserting the same declaratory judgment actions as the Complaint in this case. 2009 Complaint (Ex. 1 to Def. Motion). Several amendments to the Complaint were filed asserting additional causes of action. 2009 Amended Complaint (Ex. 2 to Def. Motion); 2009 Pl. Counterclaim (Ex. 3 to Def. Motion); Order adding Counterclaim to Complaint (Ex. 4 to Def. Motion). The Association filed a counterclaim seeking attorneys' fees and expenses "associated with the defense of the action" on May 13, 2009, as the Association incurred an insurance deductible in connection with defending the action. 2009 Answer to Complaint (Ex. 5 to Def. Motion); Insurance deductible Payable to McNair (Ex. 6 to Def. Motion).

Thereafter, Plaintiff filed an application with the Architectural Review Board (ARB) for a swing set. Swing Set Application (Ex. 7 to Def. Motion). The Association sent a Notice of Disapproved Request for the swing set due to its proposed location. Disapproval of Application (Ex. 8 to Def. Motion). In response, and while the 2009 Case was pending, Plaintiff filed the SCHAC Complaint challenging the Association's denial of his application based on allegedly discriminatory practices. At issue in the SCHAC matter was whether the Association properly denied the application in accordance with the Declaration and Bylaws in an evenhanded and non-discriminatory manner. McNair was hired to defend the SCHAC Complaint by the Association's insurance carrier, and the Association incurred a deductible. Insurance Deductible Payable to McNair. (Ex. 9 to Def. Motion). On January 11, 2010, SCHAC determined that there was no reasonable cause for Plaintiff's Complaint. SCHAC letter (Ex. 10 to Def. Motion).

After Plaintiff was unsuccessful in the proceeding before SCHAC, Plaintiff filed the 2010 Case challenging the Association's authority to enforce the architectural restrictions in the Declaration against his property and the denial of his swing set application on October 12, 2010. 2010 Complaint (Ex. 11 to Def. Motion). The Association filed an amended answer and counterclaim on October 24, 2011, seeking a declaratory judgment that Plaintiff is subject to the Declaration pursuant to S.C. Code Ann. 15-53-10 et seq. and a breach of the Declaration claim seeking damages related to fines incurred, injunctive relief, and attorneys' fees and costs. 2010 Answer and Counterclaim (Ex. 12 to Def. Motion). On December 20, 2011, Plaintiff filed an answer to the counterclaim and asserted his own "counterclaim" against the Association, in which he alleged that the Association's counterclaim was a violation of the South Carolina Frivolous Proceedings Act because it was filed for the purpose of harassing Plaintiff and for other improper purposes. Pl. Answer and Counterclaim (Ex. 3 to Def. Motion). The Association moved to strike the

-3-

counterclaim, but the court ordered that it be added as an amendment to Plaintiff's complaint. Order (Ex. 4 to Def. Motion).

The Consolidated Cases were tried without a jury before special referee Ralph Stroman from August 8, 2012, through August 12, 2012. At the trial, the Association presented evidence, through Freiboth's direct examination testimony, that it paid two insurance deductibles in the amount of $2,500.00, for a total of $5,000.00, to McNair in connection with its enforcement of the Declaration against Plaintiff. Excerpts of Record on Appeal pp. 2761-2774 (Ex. 13 to Def. Motion). In addition, the president of the Association testified that the attorneys' fees were paid in the form of deductibles in connection with the 2009 Case and the SCHAC matter. Id. The Association's checks to McNair were admitted into evidence as Defendants' Exhibits 62 and 79. The Association also admitted the Swing Set Application, the Disapproval of Application, and the SCHAC letter into evidence to rebut Plaintiff's testimony that the Association's denial of the application was improper and as proof of the Association's efforts to enforce the Declaration against Plaintiff. Plaintiff cross examined the president of the Association regarding the payment of the deductibles, the denial of his swing set application, and whether the recovery of the deductibles by the Association was proper.  Plaintiff also argued that the Association's counter claim was a violation of the Frivolous Proceedings Act. Excerpts of Record on Appeal pp. 828-32; 944-50; 979-98 (Ex. 14 to Def. Motion; Ex. 39 to Def. Suppl. Brief).

The 2012 Final Order held in favor of the Defendants on all counts and awarded the Association attorneys' fees in the amount of $5,000.00 and the fines levied for the unapproved improvement on his property line in the amount of $2,326.00. Final Order (Ex. 15 to Def. Motion). Post-Trial Motions were filed by Plaintiff on September 19, 2012, challenging various finding in the Final Order, including the award of attorneys' fees and the judgment against Plaintiff for the fines.

Pl. Post-Trial Motions (Ex. 16 to Def. Motion). The judge denied the Post-Trial Motions, Order denying Post-Trial Motions (Ex. 17 to Def. Motion), and Plaintiff filed a Notice of Appeal of the Final Order with the South Carolina Court of Appeals on April 3, 2013. Notice of Appeal (Ex. 18 to Def. Motion).

Plaintiff extensively briefed numerous issues in his appellate brief, including the issues of whether the lower court erred in 1) awarding attorneys' fees upon the grounds that one of the insurance deductibles was paid in connection with the SCHAC matter, 2) awarding the Association a judgment for the fines rendered, 3) declaring his property subject to the Association's governing documents and the Association's authority, and 4) finding that the Association did not violate the governing documents or the South Carolina Non-Profit Corporation Act. Pl. Appellate Brief (Ex. 19 to Def. Motion). The South Carolina Court of Appeals denied Plaintiff's appeal and affirmed the Final Order in the Unpublished Opinion No. 2015-UP-111. Unpublished Opinion (Ex. 20 to Def. Motion). Plaintiff filed a petition for Rehearing on March 12, 2015 (Ex. 21 to Def. Motion) and Contempt Motions on March 17, 2015 against Freiboth counsel, whom represent the Respondents in the appeal. Contempt Motions (Exs. 22, 23 to Def. Motion). The petition for rehearing sets forth grounds that the trial court improperly awarded the attorneys' fees to the Association. Respondents' Return to Motion for Rehearing (Ex. 24 to Def. Motion); Pl. Reply to Return of Defendants (Ex. 25 to Def. Motion). Plaintiff's petition for rehearing was denied by the South Carolina Court of Appeals on April 24, 2015. Order Denying Petition for Rehearing (Ex. 26 to Def. Motion).

On May 12, 2015, Plaintiff filed a Petition for Writ for Certiorari with the South Carolina Supreme Court appealing the Unpublished Opinion. Petition for Writ of Certiorari (Ex. 27 to Def. Motion). The Supreme Court denied Plaintiff's Petition for Writ (Ex. 28 to Def. Motion) and the remittitur was issued on January 21, 2016. Upon the issuance of the remittitur, Plaintiff filed his Rule

60(b) Motion dated January 22, 2016, the amended Rule 60(b) Motion dated February 1, 2016 (Exhibit 30), and a Motion to Dismiss the Association's counterclaim dated March 11, 2016 (Exhibit 31) seeking to set aside the judgment against him. (Exs. 29-31 to Def. Motion). The formal order denying the Motion to Dismiss was filed on June 6, 2016, (Ex 32 to Def. Motion), and Plaintiff filed a notice of appeal that appears to be currently pending before the South Carolina Court of Appeals (Ex. 33 to Def. Motion).

## IV.    STANDARD OF REVIEW

Defendant seeks dismissal of Plaintiff's claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Expounding on its decision in Twombly, the United States Supreme Court stated in Iqbal:

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Iqbal, 556 U.S. at 677-78 (quoting Twombly, 550 U.S. at 555, 556, 557, 570) (citations omitted); see also Bass v. Dupont, 324 F.3d 761, 765 (4th Cir.2003).

Res judicata is an affirmative defense and is treated as a basis for dismissal under Rule 12(b)(6). See Davani v. Va. Dept. of Trans., 434 F.3d 712, 720 (4th Cir. 2006). A court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009). A court may also ". . . take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

## V.  DISCUSSION

"Res judicata is applied to prevent the re-litigation of claims, and thus prevent the unsettling of a prior judgment, whether by increasing or decreasing the award or by reversing the result." Heckert v. Dotson, 272 F.3d 253, at 258 (4th Cir. 2001). As stated by the Fourth Circuit,

> Under the res judicata principles, a prior judgement between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication. The doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel. The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgement in the prior action bars litigation 'not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented.' However issue preclusion is more narrowly drawn and applies when the later litigation arises from a different cause of action between the same parties. Issue preclusion operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction in the first litigation.' Thus, while issue preclusion applies only when an issue has been actually litigated, claim preclusion requires only a valid and final judgement."

Orca Yachts, L.L.C. v. Mollicam, Incorporated, 287 F.3d 316, 318 (4th Cir. 2002)(internal citations omitted).

Claim preclusion bars the re-litigation of claims that were raised or could have been raised

-7-

in prior litigation. However, it does not apply to all claims that were raised or could have been raised in the prior litigation. Claims are barred "only when three elements are satisfied: 1) the prior judgement was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." Pittston Co. v. United States, 199 F.3d 694, 704 (4th Cir. 1999) (internal citations omitted). The doctrine bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding. Brown v. Felsen, 442 U.S. 127, 131, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir.1991). In the present case, all three elements of res judicata, or claim preclusion, are satisfied.

It is undisputed that the prior judgments at issue were final, on the merits, and rendered by a court of competent jurisdiction. It is further undisputed that both Plaintiff and Defendant were parties in the previous actions. The issue here is whether the claims in the present case are based upon the same cause of action involved in the previous cases. "[T]he appropriate inquiry to determine whether causes of action are identical for claim preclusion purposes is whether the claim presented in the new litigation 'arises out of the same transaction or series of transactions as the claim resolved in the prior judgment.'" Pittston, 199 F.3d at 704. "The expression 'transaction' in the claim preclusion context 'connotes a natural grouping or common nucleus of operative facts.'" Id. (citing Restatement (Second) of Judgments § 24 cmt. b). It is appropriate to consider causes of action as identical for claim preclusion purposes when they are related "in time, space, origin, or motivation, and [when] taken together they form a convenient unit for trial purposes." Id.

**1.     Retaliation**

Plaintiff alleges that Defendant retaliated against him for filing a complaint of discrimination with the SCHAC by seeking attorneys' fees and costs in the state court actions as well as a fine levied for the unapproved improvement on Plaintiff's property line.  He alleges that attorneys' fees were retaliatory because they were not attorneys' fees at all, but insurance deductibles payable to the attorney, nor were they related to the 2009 complaint as set forth by Defendant but instead related to the SCHAC investigation.  He also alleges that the fine sought by Defendant was never actually assessed against Plaintiff.  Am. Compl. ¶ 4(d).   Plaintiff previously made these arguments in his post-trial motions and subsequent appeal in support of his claim that the award of the fees and costs and fine was improper, and both the trial court and the appellate court found that the award of fees, costs, and fines was proper.  See Pl. Post Trial Motions, Order Denying Post-Trial Motions, Pl. Appellate Brief, and Unpublished Opinion. (Exs. 16, 17, 19, 20).

Plaintiff has not previously alleged that Defendant acted in retaliation in seeking these fees, costs, and fines.  However, his claim arises out of the same transaction or series of transactions as the claims resolved in the prior judgment.  "Claims may arise out of the same transaction or series of transactions even if they involve different harms or different theories or measurements of relief."  Harnett v. Billman, 800 F.2d 1308, 1314 (4th Cir.1986).  Res judicata applies even though the claims asserted in the first suit are different than the claims asserted in the second suit, so long as they arise out of the same transaction or series of transactions. As explained by the Fourth Circuit:

> Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that "[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law."

Pueschel v. U.S., 369 F.3d 345, 355 (4th Cir.2004) (quoting Kale v. Combined Ins. Co. of Am., 924

F.2d 1161, 1166 (1st Cir.1991)).

An exception to this "same transaction or series of transactions" rule arises when the new claim did not "exist" at the time of the earlier case such the parties lacked a full and fair opportunity to litigate it. See Union Carbide Corp. v. Richards, 721 F.3d 307, 315 (4th Cir.2013) (citing Taylor v. Sturgell, 553 U.S. 880, 892, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008)). Two scenarios give rise to this exception: (1) when a new statute provides an independent basis for relief that did not exist at the time of the prior action,[1] or (2) when "a new factual development give rise to a fresh cause of action." Id. Here, Plaintiff's retaliation claim did not exist at the time he initially filed his complaints because it arises out of Defendant's counterclaim in the 2010 action seeking attorney's fees, costs, and fines.[2] However, Plaintiff had the opportunity to add a retaliation claim during the course of the litigation, and his failure to do so is fatal here:

> [Res judicata] requires a plaintiff to join all claims together that the plaintiff has against the defendant whenever during the course of the litigation related claims mature and are able to be maintained. Thus, even if an additional claim does not mature until well after the initial complaint has been filed, the plaintiff nevertheless must seek to amend the complaint to add additional claims as a compulsory claim when the additional claim can be brought.

Stone v. Dep't of Aviation, 453 F.3d 1271, 1278–79 (10th Cir.2006). Defendant filed its counterclaim seeking the attorney's fees and costs on October 24, 2011. See 2010 Answer and Counterclaim (Ex. 12 to Def. Motion). On December 20, 2011, Plaintiff filed an answer to the counterclaim and asserted his own "counterclaim" against the Association, in which he alleged that the Association's counterclaim was a violation of the South Carolina Frivolous Proceedings Act

---

[1] This exception is not at issue here.

[2] Plaintiff argues that the retaliation claim was not "ripe" until the court ruled on the counterclaim and entered a judgment. However, the alleged retaliatory act was not dependent upon some action by the court. This argument is without merit.

because it was filed for the purpose of harassing Plaintiff and for other improper purposes. Pl. Answer and Counterclaim (Ex. 3 to Def. Motion). The harassment and improper purpose allegations raised by Plaintiff in his "counterclaim," which the state court allowed as an amendment to his complaint, is the same argument he relies on here with respect to his retaliation claim. Thus, Plaintiff had the opportunity to raise his retaliation claim along with this Frivolous Proceedings Act claim and failed to do so.[3] Therefore, his attempt to raise the claim here is barred.

In sum, despite Plaintiff's artful pleading that the fees, costs and fines were retaliatory, the propriety of the award of those fees, costs, and fines has been adjudicated and cannot be raised again here.[4]

### 2.     Declaratory Judgments

Defendant argues that all of the declaratory judgment issues raised in the present complaint have also been adjudicated, even though they may be presented slightly differently here than in the previous cases. Each "demand for declaratory judgment" is discussed below, along with language from the Final Order or Post Trial Order addressing the same issue.

- **Declaratory Judgment Regarding Voting Lists**

    **Amended Complaint**:   Voter lists must be provided to the members of the Association with email addresses and phone numbers and the IHOA has no discretion in providing such information.  p. 12, ¶ 10(a)(1)-(2).

---

[3] Plaintiff argues that the Frivolous Proceedings Act claim was based upon the fines, not the attorney's fees and costs. However, the issue is not whether Plaintiff actually raised the retaliation claim, but whether he had the opportunity to raise it and failed to do so.

[4] Plaintiff also raises some allegations of retaliation by Jay Cartman, a member of the ARB, whom Plaintiff named in his SCHAC complaint. Plaintiff alleges that Cartman drove a stake into Plaintiff's irrigation system and threw hypodermic needles onto his lawn. Am. Compl. pp. 5-6; ¶ 4(c). He also alleges that William Fletcher, the IHOA Board Treasurer threw eggs on Plaintiff's vehicles and property. Am. Compl. p. 8, ¶ 4(d)(7). These individuals are not parties to this action.

**Final Order**: "Plaintiff failed to state a good faith basis for his request for the voting list as required by the Act. According to his email, he requested the list to "communicate with fellow homeowners" after he filed his complaint in the 2009 Lawsuit. His request was not specific and did not provide the reason for communicating with fellow members; as a result, it was properly denied." p. 24, § 8 (Ex. 15 to Def. Motion).

- **Declaratory Judgments Regarding Plaintiff's Membership**

**Amended Complaint**: "Demand for Declaratory Judgment that the February 3, 2014, Advisory Opinion of the Attorney General of South Carolina is correct and should be taken as case law specifically that SC Code Sec. 33-31-620(a) provides that Plaintiff has an absolute right to resign from the IHOA Defendant and that subsection (b) provides that subsequent to resignation Plaintiff has no further financial obligations to the IHOA Defendant incorporated under South Carolina Code Title 33 Chapter 31 (SC Non-Profit Corporation Act), where the Attorney General wrote that "non-profit corporations must follow the law." p. 13, ¶ 10(b).

"Demands for Declaratory Judgment that S.C. Code Sec. 33-31-601 holds that plaintiff never was a member of the IHOA Defendant because the Act pre-empts provisions of the covenants allegedly running with Plaintiff's land and pre-empts the IHOA Defendant's bylaws which mandates involuntary membership based on where Plaintiff lives." p. 13, ¶ 10(c).

**Post-Trial Order**: "At the February 4, 2013 hearing, Plaintiff argued that the Declaration's requirement that all homeowners within the International Club be members of the HOA violates the South Carolina Non-Profit Corporation Act, S.C. Code Ann. § 33-31-620 stating that members may resign at any time. The Plaintiff may resign from the HOA at any time by selling his International Club property. Because the Plaintiff has the ability to resign, the Declaration is not in violation of the South Carolina Non-Profit Corporation Act." pp. 7-8, ¶¶ 20-21 (Ex. 16 to Def. Motion).

- **Declaratory Judgments Regarding Assessments**

**Amended Complaint**: "Demands for a Declaratory Judgment that SC 33-31-612, Member's liability to third parties, applies to Plaintiff's relationship with the IHOA Defendant and means that Plaintiff cannot be forced to pay assessments which are, on their face, to pay the IHOA Defendants contractual obligations to the IHOA Defendant's vendors." p. 13, ¶ 10(d).

"Demands for Declaratory Judgment that it is not a proper covenant running with the land but instead a voidable personal service contract or obligation not meeting the statute of frauds that (1) Plaintiff must purchase goods or services, specifically cable tv and garbage collection, from the HOA Defendant, and also join and pay for

-12-

membership in the IHOA Defendant's Amenity Center, which membership is not open to all members of the IHOA; (2) Plaintiff must pay money to the IHOA to maintain the county owned shoulders of country roads running through the subdivision and likewise roads outside and not even close to the subdivision; (3) Plaintiff must pay money to the IHOA Defendant to maintain IHOA property in which Plaintiff has no equity interest–such as ponds and open space–not used by Plaintiff; (4) Plaintiff maintain the county owned shoulders of the county owned road adjacent to Plaintiff's property which is outside the property line. pp. 15-16, ¶ 10(g).

"Demand for Declaratory Judgment that the IHOA Defendant cannot force Plaintiff to pay for goods or services—specifically use of the Amenity Center—that, Plaintiff cannot use because of a handicap cognizable under the Federal Americans with Disabilities Act. . . Plaintiff is unable to sue the exercise equipment . . . and the . . . swimming pool because of mechanical and respiratory injuries suffered by plaintiff in the '9-11 attack'." p. 17, ¶ 10(i).

"Demand for Declaratory Judgment that the South Carolina Horizontal Property Act, Title 27 Chapter 31, provides no authority for the IHOA Defendant to force Plaintiff to pay assessments to the IHOA Defendant to maintain the Amenity Center and other facilities." p. 18, ¶ 10(k).

**Final Order**: "Plaintiff's claim that the Defendant HOA misspent funds stems from his argument that the Defendant HOA maintains property he does not own. . . the Defendant HOA has the authority to maintain property that it does not own to ensure that the Community as a whole has a consistent appearance, including property of adjacent owners and property within Horry County's right of way." p. 39, ¶ 16 (Ex. 15 to Def. Motion).

"Plaintiff argues that the assessments used to pay for cable services and waste management are invalid, because the services do not touch and concern the land. As a matter of law, covenants for payment of annual assessments for the operation of property owners associations are covenants running with the land. . . Because the assessments have a beneficial effect on the owners' properties, the assessments touch and concern the land and are enforceable." p. 19, ¶ 6(a) (Ex. 15 to Def. Motion).

". . . Plaintiff contends that he is not obligated to pay the assessments for the Amenity Center. This contention is without merit because, as a member of the Community, he is subject to the Declaration. Whether he uses or does not use the Amenity Center is not a factor in determining his obligation to pay assessments." p. 17, ¶ 5 (Ex. 15 to Def. Motion).

- **Declaratory Judgment Regarding Parking Restrictions**

**Amended Complaint**: "Demand for Declaratory Judgment the IHOA Defendant's covenants or IHOA rules cannot limit Plaintiff's free use of the streets running

through the development that were incorporated into the Horry County public road system by dedication. p. 16, ¶ 10(h).

**Final Order**: ". . . Plaintiff argued that the dedication and conveyance precludes the Defendant HOA from enforcing Section 7.25. The dedication documents references plats that show the roads. . . The plat specifically states that the property on the plat, including International Club Boulevard "are subject to all rights and restrictions of record", which include the covenants contained in the Declaration. . . I find that the streets within the Community were dedicated subject to the Declaration and all amendments thereto." p. 22, ¶7(a) (Ex. 15 to Def. Motion).

•        **Declaratory Judgment Regarding Proper Entity**

**Amended Complaint**: "Demand for Declaratory Judgment that the Covenants which allegedly run with Plaintiff's property do not subject Plaintiff and the IHOA Defendant to any mutual rights and obligations because—(1) those covenants name "The Murrells Inlet Golf Plantation Association, Inc. ("MIGPA"). . . (2) an alternative HOA arguably named "The International Club Association" ("ICA") in Amendment 1 to the covenants. . . is likewise the IHOA Defendant. . ." p. 17, ¶10(j).

**Final Order**: "At trial, the Plaintiff contended that the Defendant HOA is not the entity entitled to manage the affairs of the Community, for the Defendant HOA is not named in the Declaration. I find this claim to be without merit. The Defendant HOA's Articles of Incorporation were submitted to the Secretary of State by the Community's Developer, and the Developer caused the First Amendment to be filed which changed the name of the Defendant HOA to its present name . . . Having reviewed the Declaration, together with the amendments, as well as the Defendant HOA's Articles of Incorporation, I find that the Defendant HOA is the proper legal entity designated under the Declaration." p. 11, ¶ 1 (Ex. 15 to Def. Motion).

For the same reasons discussed above with respect to Plaintiff's retaliation claim, each of Plaintiff's requests for declaratory judgment are barred by the doctrine of res judicata because they arise out of the same transaction or series of transactions. Plaintiff is essentially asking the court to make declarations regarding the application of various laws to issues already decided by a court or courts of competent jurisdiction. Even if Plaintiff's claims here were not raised in the same manner or for the same relief as the previous cases, they are still barred. As stated above, the res judicata doctrine bars litigation of all claims or defenses that were available to the parties in the previous litigation, regardless of whether they were asserted or determined in the prior proceeding. Brown, 442 U.S. at

131.[5]

In sum, Plaintiff's present case is simply an attempt to re-litigate issues already decided or that could have been raised and decided in previous cases. Therefore, Plaintiff's claims are barred by the doctrine of res judicata and dismissal is appropriate.

## VI.   CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion to Dismiss (Document # 45) be granted and this case be dismissed in its entirety.[6]

                                                          s/Thomas E. Rogers, III
                                                        Thomas E. Rogers, III
                                                        United States Magistrate Judge

January 23, 2017
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[5] Plaintiff also seeks a declaratory judgment related to whether the fine awarded was actually assessed. Specifically, Plaintiff seeks declaratory judgments that any action taken by the board that is not reflected in the minutes is void. Am. Compl. p. 14-15, ¶ 10(e)-(f). He alleges that this issue "directly affects the IHOA Defendant's claim that is Board of Directors decided that Plaintiff had violated the Use Restrictions AND that the IHOA Defendant's Board had imposed a fine on Plaintiff." Id. This, too, is barred by res judicata for the same reasons discussed with respect to Plaintiff's retaliation claim.

[6] Subsequent to the filing of the present Motion to Dismiss, Plaintiff filed a Motion to Disqualify (Document # 50) Alicia Thompson, Henrietta Golding, and McNair Law Firm from representing Defendant in this matter because they "will be subject to deposition, document discovery, and testimony at trial because they are uniquely situated to have first-hand knowledge of matter in litigation and are uniquely in possession of relevant and admissible documents which they are also uniquely situated to be able to authenticate." Pl. Motion p. 1. Because dismissal of Plaintiff's claims is appropriate at this stage in the litigation, i.e., before discovery and trial, Plaintiff's motion will be moot.